UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | No. 6:11-CR-62-GFVT-HAI |
| v. | ) ) | RECOMMENDED DISPOSITION |
| DORSEY CLARK, | ) ) | |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 46 at 2), the Court considers reported violations of supervised release conditions by Defendant Dorsey Clark. Judge Van Tatenhove entered a Judgment against Defendant on April 20, 2012, following a guilty plea to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). D.E. 44 at 1. Defendant was sentenced to seventy-five months of imprisonment followed by three years of supervised release. *Id.* at 2-3. Defendant began his term of supervised release on April 14, 2017.

On January 18, 2018, the United States Probation Office ("USPO") submitted a Report on Offender Under Supervision indicating that, on December 28, 2017, Defendant submitted a urine sample that tested positive for oxycodone and buprenorphine via instant testing. D.E. 45. Defendant admitted to ingesting a Percoset tablet without a valid prescription the day before, but denied using buprenorphine. *Id.* The urine sample was sent to Alere Toxicology Services and ultimately tested positive for oxycodone and buprenorphine. *Id.* The USPO suggested that the violation was an isolated incident and requested that Defendant be allowed to remain on supervised release. *Id.* Judge Van Tatenhove approved this request. *Id.*

**I.**

On February 5, 2018, the USPO issued a Supervised Release Violation Report ("the Report") that initiated this revocation. The Report alleges that a urine specimen collected on January 24, 2018, ultimately tested positive for oxymorphone, the metabolite of oxycodone. Defendant repeatedly denied using any controlled substances since his previous admission in December, 2017. The Report charges three violations stemming from this conduct. As Violation #1, the Report charges that Defendant violated Standard Condition #7, which requires that Defendant "shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." This is a Grade C violation. As Violation #2, the Report charges that Defendant violated the prohibition against committing another federal, state, or local crime by possessing oxycodone, which is a violation of 21 U.S.C. § 844(a) and a Class E felony. This is a Grade B violation. As Violation #3, the Report charges that Defendant violated Standard Condition #3, which requires him to "answer truthfully all inquiries by the probation officer." This is a Grade C violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on February 21, 2018, and Defendant entered a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 49. The United States moved for interim detention and Defendant did not argue for release. *Id.* Due to the heavy 18 U.S.C. § 3143(a) defense burden, the Court found detention required and remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing held on March 8, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 51. He competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings,

Defendant admitted the factual basis for the violations as described in the Report. In the supervised release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). Possession of a controlled substance is a violation of 21 U.S.C. § 844. The United States thus established all violations under the standard of § 3583(e).

The parties agreed to a recommended sentence of twelve months and one day of incarceration followed by twenty-three months of supervised release. Defense counsel recommended inpatient drug rehabilitation treatment as a component of Defendant's sentence.

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all of the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pled guilty to possession of a firearm by a convicted felon, which is a Class C felony. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2); 3559(a)(3). For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3). The maximum term of supervised release that may be re-imposed upon revocation is thirty-six months, less any term of imprisonment imposed, pursuant to § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in

Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under section 7B1.1, Defendant's conduct would qualify as a Grade C violation with respect to Violations #1 and #3 and a Grade B violation with respect to Violation #2. Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and a Grade B violation, Defendant's Range under the Revocation Table of Chapter 7 is eighteen to twenty-four months.[1]

The parties jointly recommended twelve months and one day of incarceration followed by twenty-three months of supervised release, a sentence below Defendant's Guideline Range. Defendant's underlying conviction involved possession of a firearm by a convicted felon. The United States argued that his underlying conviction and violation conduct both evidence an inability to comply with the law. Although Defendant's underlying conviction did not involve drugs, as his violation conduct did, the government noted that he has a history of drug use. The government emphasized that Defendant's Guidelines Range of eighteen to twenty-four months is driven by his significant criminal history, which includes non-compliance and violence. As mitigating, the government acknowledged Defendant's positive employment history during his current term of supervised release. Regarding the need to deter criminal conduct and protect the public, the government argued that incarceration is necessary because Defendant's drug use promotes illegal drug trafficking, which endangers the public.

Although the government disagreed with defense counsel's recommendation of mandatory inpatient substance abuse treatment, it did emphasize Defendant's need for continuing

---

[1] *See* U.S.S.G § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

substance abuse treatment at the discretion of the USPO.  A sentence below the Guidelines, the government argued, would allow Defendant to remain on supervised release and receive the supervision necessary to address his drug addiction and protect the public.  Additionally, the government noted that Defendant did not initially accept responsibility for his drug use and was not honest with himself about his addiction, so inpatient substance abuse treatment is inappropriate.  In support of the requested downward departure, the government argued that Defendant needs continuing supervision and treatment, which can be provided upon the re-imposition of supervised release.  The government acknowledged that Defendant did not complete the Residential Drug Abuse Program ("RDAP") during his previous incarceration, but argued that Defendant may succeed if provided an additional opportunity for drug treatment during his next term of supervision.  The government warned, however, that it would seek a sentence at the higher end, or above, the Guidelines, if Defendant continues to violate the terms of his supervised release.

Defense counsel largely agreed with the United States and emphasized that Defendant is a hard worker who suffers from drug addiction.  Regarding the nature and circumstances of the underlying offense, counsel acknowledged that possession of a firearm by a convicted felon is a significant offense.  Defendant's employer informed counsel that it would allow him to return to work because of his strong work ethic and dependability.

Counsel argued that, although drugs have played a role in Defendant's entire life, he has not realized the extent of his addiction until now.  Defendant's partner is expecting a child in April, and Defendant has realized that he needs help with his drug addiction in order to be involved in his child's upbringing.  Counsel explained that Defendant left the RDAP program and continued to use oxycodone after the Court did not revoke his supervised release because he

was not ready to admit that he suffers from an addiction. Counsel agreed that incarceration is necessary, but it encouraged the Court to require inpatient substance abuse treatment for a portion of Defendant's incarceration in order to provide him with the tools necessary to address his addiction.

Defendant addressed the Court and apologized for lying about his oxycodone use. He acknowledged his addiction and asked the Court to provide him with tools to address it through inpatient substance abuse treatment. Defendant explained that he has participated in substance abuse treatment before, but emphasized that it was not enough.

### III.

At the outset, the Court notes that Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession). To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as Defendant's Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant's original offense – possessing a firearm as a convicted felon – shows a disrespect for the law. The repeated violations of his supervised release show a similar disrespect for the conditions of his supervision. While Defendant may be a hard worker and the Court received a positive report from his employer, he also has a long criminal history that involves many instances of noncompliance. Defendant violated his state pretrial diversion, violated his state

6

parole six times, which resulted in a one year sentence, and violated the terms of his pretrial release in this Court.  His state parole violations included failure to attend substance abuse classes.  Defendant's Judgement in this Court included a recommendation for participation in the RDAP program.  D.E. 44 at 2.  Defendant completed one week and quit.  He has had many opportunities to learn and he has failed to take advantage of them.  Regarding the need to provide needed education, training, and treatment, it is clear that Defendant needs treatment.  However the Court questions the sincerity of his request for inpatient substance abuse treatment because of the pattern of denial that he has demonstrated.  Because Defendant has been consistently dishonest about his use of drugs, he has not demonstrated that he is prepared to benefit fully from inpatient treatment and the Court believes that others can benefit more from an investment of the public's resources.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue.  *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.")  The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e).

Defendant has committed serious breaches of the Court's trust because he has been consistently dishonest.  The parties' below-guidelines recommendation is very lenient.  On a first supervised release revocation, the Court typically starts in the middle of the Guidelines Range and deviates upward or downward, depending on aggravating and mitigating factors.  The middle of Defendant's Range is twenty-one months.  Recommending a sentence of twelve

months and one day, nine months below the middle of Defendant's Range, is a substantial departure considering Defendant's history of noncompliance. The Court will adopt the parties' recommendation and recommend a sentence of twelve months and one day of incarceration because of the mitigating factors identified by the parties.

A twelve-month sentence is also below Defendant's Guideline Range. When departing from the Guidelines Range, the Court must provide an adequate explanation and "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)) (internal quotation marks omitted). The Court must state "the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]" *Id.* (quoting 18 U.S.C. § 3553(c)(2)) (internal quotation marks omitted). Here, Defendant has maintained employment and the USPO received a very encouraging report from his employer. He has clearly tried to comply with the terms of his supervised release, despite his recent violations. Defendant's positive work history shows that he is intelligent and a hard worker.

For the reasons stated above, the Court finds a sentence of twelve months and one day to be sufficient, but not greater than necessary, to meet the § 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). The Court warns that the need to protect the public and address the breach of the Court's trust will require a significantly longer term of incarceration upon a future violation of Defendant's supervised release.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release

8

authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's conviction under 18 U.S.C. § 922(g) carried a maximum supervised release term of three years. *See* 18 U.S.C. §§ 922, 924, 3583(b)(2). Under § 3583(h), the maximum is three years "less any term of imprisonment . . . imposed upon revocation of supervised release." 18 U.S.C. § 3583(h). This includes any term of incarceration imposed upon previous revocations as well as any newly-imposed term of incarceration. *See United States v. Brown*, 639 F.3d 735, 738 (6th Cir. 2011) (holding that § 3583(h) requires aggregation of any periods of incarceration imposed upon multiple revocations). The Court has not previously revoked Defendant's supervised release. The maximum term of supervised release that may be imposed is thirty-six months, and the recommended sentence is twelve months and one day. Therefore, the maximum term of supervised release that may be re-imposed is twenty-three months and twenty-nine days. This Court finds the maximum term is needed to protect the public and rehabilitate Defendant. Defendant's current conditions of supervised release, which allow for substance abuse treatment at the discretion of the USPO, are sufficient to address his needs.

    Based on the foregoing, the Court **RECOMMENDS**:

        1.    That Defendant be found guilty of all violations;

        2.    Revocation with a term of twelve months and one day; and

        3.    twenty-three months and twenty-nine days of supervised release to follow, under the conditions previously imposed.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 13th day of March, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge